UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO PALACIOS and
MARIA PALACIOS,

    Plaintiffs,

-vs-

UNITED STATES OF AMERICA,

    Defendants.

_____/

WILLIAM S. STERN P27396
Attorney for Plaintiff
24750 Lahser Road
Southfield, Michigan 48033
248-353-9400
bstern1213@yahoo.com

_____/

## COMPLAINT AND AFFIDAVITS OF MERIT

NOW COMES the plaintiffs, by and through their attorney, William S. Stern, and for their causes of action against the defendant states as follows:

## NATURE OF THE CASE

1. This case arises due to the failure of the treating family doctor, that doctor being Dr. Prasani Jayatilake who was treating the plaintiff Mario Palacios out of the clinic known as Oakland Primary Health Services located at 46 N. Saginaw in Pontiac, Michigan, to comply with the standard of care owed to the patient when the doctor failed to administer proper tests to rule out a potential diagnosis of colorectal cancer when presented with

symptoms that required the doctor to rule out such a diagnosis. The failure to administer proper tests was a proximate cause of the inability to cure the plaintiff's fatal colon cancer. The United States of America is liable under the FTCA because Dr. Jayatilake was employed by Oakland Primary Health Services which was a federally qualified health center under 42 USC 2332(g)(k) and the amended Federally Supported Health Centers Assistance Act of 1995, Public Law No. 104-73.

## THE PARTIES

2. Mario Palacios is a resident of Pontiac, Michigan.

3. Maria Palacios is the wife of Mario Palacios who resides with Mario Palacios in Pontiac, Michigan.

## DEFENDANT

4. The Defendant United States of America includes the United States Department of Health and Human Services which operated the clinic known as Oakland Primary Health Services, Inc. located at 46 N. Saginaw in Pontiac, Michigan.

5. At all times mentioned herein, Dr. Prasani Jayatilake was an employee of this clinic known as Oakland Primary Health Services, Inc. that was operated under the auspices of the United States Department of Health and Human Services.

6. The United States Department of Health and Human Services (DHHS) is an authorized federal agency of the defendant United States of America.

7. At all times pertinent to this complaint, Oakland Primary Health Services was a corporation organized under the laws of the State of Michigan, located and doing business in Pontiac, Michigan. At all times pertinent to this complaint, Oakland Primary Health Services was a federally qualified health center pursuant to 42 USC §233(g)(k) operating under the DHHS.

8. Oakland Primary Health Services at all times relevant to the allegations of this complaint, operated a health care facility and held itself open for the care and treatment of the general public, including the plaintiff Mario Palacios.

9. At all times relevant to the allegations of this complaint, Oakland Primary Health Services represented and held out to the public, including the plaintiff herein Mario Palacios, that it employed and/or maintained on its staff skilled and competent physicians.

10. Dr. Prasani Jayatilake is a physician licensed to practice in the State of Michigan on all dates mentioned herein who was holding herself out as a competent and skilled family law physician specializing in that field.

11. At all times pertinent to this complaint, Dr. Prasani Jayatilake was an employee of Oakland Primary Health Services.

12. At all times relevant to this complaint, Dr. Prasani Jayatilake acted as the actual and/or apparent agent of Oakland Primary Health Services, and therefore the United States of America is vicariously liable and responsible for her professional negligence/malpractice as set forth in this complaint. At all times relevant to this complaint, Dr. Prasani Jayatilake acted within

the scope of her employment/agency in the context of a physician-patient relationship.

## JURISDICTION AND VENUE

13. The amount in controversy exceeds $75,000.00 excluding costs, interest and attorney fees.

14. The plaintiff Mario Palacios properly presented a claim for Administrative Tort Claims for medical negligence to the Department of Health and Human Services pursuant to 28 USC §2675(a) via certified mail on April 30, 2013 and May 3, 2013 while the claim of Maria Palacios was presented some days later on or before May 17, 2013. See exhibits 1 and 2.

15. By letter dated May 8, 2013 the Department of Health and Human Services acknowledged receipt of the Tort Claim of Mario Palacios and it was acknowledged that the tort claim had been filed with the appropriate federal agency. Ex. 3

16. By letter dated May 28, 2013 the Department of Health and Human Services acknowledged receipt of the Tort Claim of Maria Palacios and it was acknowledged that the tort claim had been filed with the appropriate federal agency and was received May 23, 2013. Ex. 4

17. The plaintiff was informed that a medical review was going to be performed to assess the merits of the plaintiffs case but should the six month statute expire before the completion of the medical review, that the plaintiffs may consider the claim denied and the plaintiffs will then be able

4

to file suit in the appropriate United States District Court pursuant to 45 CFR § 35.2(b) and 28 USC § 2675 (a).

18. More than six months has expired after denial of the claim due to the failure of the Department of Health and Human Services to respond to the merits of the claim and therefore, the plaintiffs have the right to file suit pursuant to 28 USC § 2675(a) and 28 USC § 1346(b).

19. The cause of action pled in this complaint is the same as contained in the submission to the Department of Health and Human Services when the plaintiffs utilized Form 95 with its attachments.

20. This court has jurisdiction over these claims and over the defendant pursuant to 28 USC § 1346(b).

21. Venue if proper in the Eastern District of Michigan because all of the events giving rise to the action took place in Pontiac, Michigan.

## COMMON ALLEGATIONS

22. The plaintiff Mario Palacios at the time that this action arose, was 36 years old residing with his wife Maria Palacios and their five children.

23. Mario Palacios presented himself to the Oakland Primary Health Services Inc. (OPHS), clinic located at 46 N. Saginaw St. in Pontiac, Michigan on February 10, 2011.

24. The history conveyed to the facility and physician who treated the plaintiff Mario Palacios, Dr. Prasani Jayatilake, was that he had blood in the stool for approximately one year along with constipation.

25. Mario Palacios was diagnosed at that February 10, 2011 presentation at OPHS with hemorrhoids and he was treated with rectal suppositories and stool softeners.

26. On August 1, 2011, Mario Palacios returned to OPHS with a history of blood in the stool and abdominal discomfort, and constipation, aggravated by heavy meals. The diagnosis on this occasion was diverticulitis of the colon and hemorrhoids.

27. The treatment prescribed by Dr. Prasani Jayatilake on this August 1, 2011 occasion was antibiotics, stool softeners and an antacid medication.

28. On January 26, 2012, Mario Palacios returned to OPHS and was evaluated once again by Dr. Prasani Jayatilake. On this occasion, he conveyed a history of abdominal discomfort in the left upper and lower quadrants with bloating and constipation. The diagnosis once again was diverticulitis of the colon and constipation. The treatment prescribed on this January 26, 2012 occasion was antibiotics, rectal suppositories and stool softeners.

29. On this January 26, 2012 occasion, a CT scan was ordered and the plaintiff Mario Palacios attempted to schedule this scan with the clinic but the clinic never made the arrangements to conduct the scan, even though requested by the plaintiff.

30. On July 28, 2012, the plaintiff Mario Palacios was admitted to the St. Joseph Mercy Oakland Hospital complaining of abdominal pain with nausea and vomiting. The history conveyed to the staff at this hospital was

6

abdominal pain on-going for approximately one year with bouts of constipation, small bowel movement every other day and a feeling of bloating and fullness. He also reported blood in bowel movements off and on for one year. His abdomen was diffusely tender. A CT scan of the abdomen and pelvis was performed. Dr. Prasani Jayatilake was consulted. The diagnosis was inflammatory sigmoid colitis and persistent abdominal pain with constipation. He was discharged on July 30, 2012.

31. Shortly after his discharge from St. Joseph Mercy Oakland Hospital on July 30, 2012, Mario Palacios traveled to Mexico. While in Mexico he underwent a colonoscopy due to extreme abdominal pain. A rectal mass was found as a result of that colonoscopy.

32. In September of 2012, Mario Palacios was admitted to Crittenton Hospital located in Rochester, Michigan where he was diagnosed with Stage 4 Adenocarcinoma of the rectum that had metastasized to the liver and lungs. Thereafter, Mario Palacios was started on palliative chemotherapy.

## COUNT I: Medical Negligence

33. The plaintiffs hereby incorporated by reference paragraph by paragraph and word for word every allegation and fact contained in paragraphs 1 through 32.

34. At all times relevant to the allegations of this complaint, Dr. Prasani Jayatilake and her employer Oakland Primary Health Services, Inc., a federally supported Health Center, owed a duty to Mario Palacios imposed by the common law and other applicable laws of the State of Michigan,

arising from the physician-patient relationship that existed between Mario Palacios and Dr. Prasani Jayatilake as well as the OPHS, of providing such care and treatment that a reasonable family physician of ordinary learning, judgment or skill faced with the same or similar conditions and circumstances, would have provided to the plaintiff Mario Palacios.

35. Dr. Prasani Jayatilake and the OPHS due to the general standard of care set forth above, should have done the following:

   a) Given consideration to the possibility that Mario Palacios had colon and/or rectal cancer when confronted with a one-year history of rectal bleeding and the other symptoms mentioned above;

   b) Referred Mario Palacios for a colonoscopy;

   c) To have not diagnosed hemorrhoids as being the cause of his symptoms, when hemorrhoids would not have caused many of his symptoms and when a rectal examination was not performed;

   d) To not have diagnosed diverticulitis when it was an unsubstantiated condition;

   e) Recognized the potential of colon and/or rectal cancer when the patient repeatedly presented with rectal bleeding;

   f) Performed a rectal examination on dates subsequent to February 10, 2011;

    g) Diagnosed and instituted timely treatment or referred for such treatment;

    h) Communicated proper findings and recommendations for further treatment to the patient.

36. Dr. Prasani Jayatilake and the OPHS in order to comply with the general and particular standard of care owed to the patient Mario Palacios, violated the standard of care in the following manner:

    i) By failing to give consideration to the possibility that Mario Palacios had colon and/or rectal cancer when confronted with a one-year history of rectal bleeding and the other symptoms mentioned above;

    ii) By failing to refer Mario Palacios for a colonoscopy;

    iii) By diagnosing hemorrhoids as being the cause of his symptoms, when hemorrhoids would not have caused many of his symptoms and when a rectal examination was not performed;

    iv) By diagnosing diverticulitis when it was an unsubstantiated condition;

    v) By failing to recognize the potential of the existence colon and/or rectal cancer when the patient repeatedly presented with rectal bleeding;

    vi) By failing to perform a rectal examination on dates subsequent to February 10, 2011;

vii) By failing to diagnose and institute timely treatment or refer for such treatment;

viii) By failing to communicate proper findings and recommendations for further treatment to the patient.

## COUNT II: CAUSATION OF DAMAGES

37. The plaintiff hereby incorporates, paragraph by paragraph and word for word, every allegation contained in paragraphs 1 through 36.

38. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff suffered severe and permanent injury, disability and deformity due to the colostomy that he underwent due to the cancerous mass obstructing his colon.

39. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff has to live his life with a colostomy bag because of the delayed diagnosis of cancer.

40. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff had to in the past and will in the future, have to undergo more extensive and debilitating chemotherapy that he otherwise would have experienced had he had a timely diagnosis of cancer.

41. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff had to undergo and experience more extensive surgery than he otherwise would have

experienced with a more timely diagnosis. In particular, with a more timely diagnosis, the plaintiff would have been treated with a low anterior resection with reanastimosis.

42. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff would have had a much greater chance of curing the cancer without the cancer metastasizing.

43. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff would have had a far greater than 50% opportunity to survive and/or achieve a better result.

44. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff is condemned to an early death.

45. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff has incurred substantial hospital and medical expenses and will in the future incur such expenses in order to treat his medical conditions, pain and debility.

46. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff has experienced a loss of earnings and loss of earning capacity and will in the future experience a loss of earnings and earning capacity.

47. The plaintiffs are hereby requesting damages for the value of the services that the plaintiff Mario Palacios provides to his household.

48. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff has experienced pain, suffering, mental anguish and emotional distress, knowing that it is likely that he will not see his children grow, will not be present for his wife and that his family will experience financial hardship and emotional distress due to the loss of their father and husband.

49. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff has been subjected to the pain and debilitation that accompanied and accompanies cancer treatment that he would not have had to experience had a timely diagnosis been made.

50. As a direct and proximate cause of one or more of the violations of the standard of care owed to Mario Palacios, the plaintiff has been unable to enjoy the normal activities of life.

51. Maria Palacios is the wife of Mario Palacios brings a claim for the loss of society and companionship and loss of consortium. Maria Palacios has experienced the horror of watching her husband suffer pain and emotional devastation due to his illness and treatment as well as watching him experience the humiliation that accompanies his condition while raising the family.

### COUNT III: Vicarious Liability

52. The plaintiffs hereby incorporates, paragraph by paragraph and word for word each allegation contained in paragraphs 1 through 51.

53. The United States of America is vicariously liable for the professional negligence/malpractice of Dr. Prasani Jayatilake and the Oakland Primary Health Services, Inc. as set forth in this complaint under the doctrines of actual agency, apparent agency, ostensible agency, joint venture/joint enterprise liability, as well as under and 28 USC §1346.
54. The plaintiffs are hereby requesting all damages allowed by the Federal Tort Claims Act and MCL 600.6922.

WHEREFORE, the plaintiffs request that the Court enter judgment against the United States of America for three million dollars, together with costs, interest and attorney fees.

Submitted by,

/s/William S. Stern P27396
24750 Lahser Road
Southfield, MI 48033
248-353-9400
bstern1213@yahoo.com